**UNDER SEAL**

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

**UNITED STATES OF AMERICA**

v.

RACHEL LEE,
BLANCEY LEE,
   aka BLANCEY ADAMS,
PORSHA LEE, and
SAMANTHA LEE,
   aka PEBBLES LEE,
   aka BUBBLES LEE,

       Defendants.

Case No. 3:14-cr-00184-JO

**INDICTMENT**

18 U.S.C. § 1349
18 U.S.C. § 1957
18 U.S.C. § 1956(h)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1) & (b)
21 U.S.C. § 853(p)
and 28 U.S.C. § 2461(c)

## THE GRAND JURY CHARGES:

### COUNT 1
### (Conspiracy to Commit Wire Fraud)

At all times relevant to this indictment:

### A. The Defendants

1.   Defendant **RACHEL LEE** was a resident of Oregon. **RACHEL LEE** held

herself out as a psychic medium and was affiliated with psychic shops in Bend, Oregon (Bend

Psychic) Canby, Oregon (Canby Psychic) and St. Helens, Oregon (St. Helens Psychic) and two

psychic shops in Portland, Oregon (Psychic of Oregon).

2.   Defendant **BLANCEY LEE, aka BLANCEY ADAMS** was at times a resident

of Oregon. **BLANCEY LEE** held himself out as general contractor. **BLANCEY LEE** and

codefendant **RACHEL LEE** at time held themselves out as a couple, as married, or as brother

and sister. **BLANCEY LEE** shared multiple residences with **RACHEL LEE** and others named in this indictment.

3.      Defendant **PORSHA LEE** was at times a resident of Oregon. **PORSCHE LEE** is believed to be the daughter of codefendant **RACHEL LEE. PORSHA LEE** at times shared the same residence with **RACHEL LEE** and others named in this indictment**. PORSHA LEE** at times held herself out as Mary Marks aka Mary Raines, the alleged wife of R.R. Jr.

4.      Defendant **SAMANTHA LEE aka PEBBLES LEE aka BUBBLES LEE** was at times a resident of Oregon. **PEBBLES LEE** at times shared the same residence with **RACHEL LEE** and others named in this indictment**. PEBBLES LEE** is believed to be the mother of the minor "G".

### B.  General Allegations

5.      R.R. Jr. (herein after Jr.), currently 66 years old, worked on and lived at the R. Tree Farm in Gaston, Oregon, along with his father, R.R. Sr. (herein after Sr.). The R. Tree Farm consisted of more than 1200 acres. After Jr.'s mother died in 1992, Jr. and Sr. lived on the property alone. Jr. was the only child of Sr. Jr. never married and had no children. Jr. had few living blood relatives.

6.      Until his death in February 2011, Sr. was the owner and controlling member of R. Tree Farm LLC. Before his death, Sr. amassed substantial assets related to his business and real estate holdings. After Sr. suffered a stroke in 1996, his health declined.

7.      Sometime in 2004, **RACHEL LEE** met Jr. Between 2004 and 2006, **RACHEL LEE** repeatedly initiated contact with Jr. via telephone and in person in locations in Washington and Multnomah Counties. During this time, **RACHEL LEE** was primarily living in Bend, Oregon, conducting business as a psychic medium at the Bend Psychic shop.

## C. The Conspiracy to Commit Wire Fraud

8.      From in or about 2004 through in or about May 2014, in the District of Oregon and elsewhere, defendants **RACHEL LEE**, **BLANCEY LEE**, and **PORSHA LEE**, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with each other, and with others, both known and unknown to the Grand Jury, to devise a material scheme and artifice to defraud Sr. and Jr. and to obtain money and property from Sr. and Jr. by means of material false and fraudulent pretenses, representations, and promises, and omissions of material fact and knowingly transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds in furtherance and execution of the material scheme or artifice, in violation of Title 18, United States Code, Section 1343.

## D. Manner and Means of the Conspiracy

9.      The purpose of the defendants' conspiracy was to fraudulently obtain money from Sr. and Jr.

10.     It was part of the conspiracy that **RACHEL LEE** sometimes brought **PORSHA LEE** with her when **RACHEL LEE** visited Jr. **RACHEL LEE** introduced **PORSHA LEE** to Jr. as **RACHEL LEE**'s daughter.

11.     It was part of the conspiracy that between 2004 and 2006, through material misrepresentations and omissions of material fact, **RACHEL LEE** gradually and incrementally established a relationship with Jr. and built trust with Jr.

12.     In October 2006, after Sr. suffered a stroke, it was part of the conspiracy that, through material misrepresentations and omissions of material fact, **RACHEL LEE** became Sr.'s full-time homecare worker. As a result, **RACHEL LEE** moved into the home shared by

Sr. and Jr. in Gaston, Oregon. **RACHEL LEE** brought **PORSHA LEE** with her to live at the Gaston home.

13. It was part of the conspiracy that, as payment for **RACHEL LEE**'s full-time homecare worker services, **RACHEL LEE** sought and received access to Jr.'s bank accounts, and to a debit card for those accounts, for the alleged purpose of covering expenses for Jr., Sr. and **RACHEL LEE**. Jr. did not authorize any other codefendant to access Jr.'s finances or to use debit cards tied to Jr.'s accounts.

14. It was part of the conspiracy that, through material misrepresentations and omissions of material fact, in addition to assisting with Sr.'s homecare needs, **RACHEL LEE** became involved in the business operations of R. Tree Farm.

15. It was part of the conspiracy that, through material misrepresentations and omissions of material fact, **RACHEL LEE** assumed access to R. Tree Farm bank accounts xx0314 and xx0161 no later than November 2006.

16. It was part of the conspiracy that that between 2006 and 2011, defendant **RACHEL LEE** falsely represented to Jr. that she would act in a fiduciary capacity toward Jr. and Sr. and would use her access and control of Jr. and Sr.'s accounts solely for Jr. and Sr.'s benefit and to pay reasonable fees and expenses to **RACHEL LEE** and others for services performed for Jr. and Sr.'s benefit.

17. It was part of the conspiracy that, shortly after moving in with Jr. and Sr., through material misrepresentations and omissions of material fact, **RACHEL LEE** brought **BLANCEY LEE** to the Gaston home, purportedly for the purpose of doing minor general contracting work at the Gaston home. **BLANCEY LEE** lived at the Gaston home on and off during approximately 2006 and 2007.

18.     It was part of the conspiracy that **RACHEL LEE** falsely represented to Jr. that **BLANCEY LEE** was a non-steady boyfriend of **RACHEL LEE** and that the two were only loosely connected.

19.     It was part of the conspiracy that between 2006 and 2011, through material misrepresentations and omissions of material fact, **RACHEL LEE** moved Jr. and Sr. to a home in northwest Portland purchased by Sr. and Jr. **BLANCEY LEE** and **PORSHA LEE** lived with Jr., Sr. and **RACHEL LEE** at the northwest Portland address from time to time.

20.     It was part of the conspiracy that, in approximately 2006, through material misrepresentations and omissions of material fact, **RACHEL LEE** took administrative control of R. Tree Farm business operations and conducted negotiations with other businesses on behalf of R. Tree Farm.

21.     It was part of the conspiracy that, through material misrepresentations and omissions of material fact, in approximately August 2009, **RACHEL LEE** opened a joint checking account with Jr. at Columbia Bank (xx7270). The funding for this account primarily came from transfers from a R. Tree Farm account (xx0161). **RACHEL LEE** controlled all the activity on the joint account. Jr.'s only knowledge of account activity on the joint account came through **RACHEL LEE** or **PORSHA LEE**.

22.     It was part of the conspiracy that **RACHEL LEE** falsely represented to bank employees at Columbia bank and that she and Jr. were engaged to be married.

23.     It was part of the conspiracy that, through material misrepresentations and omissions of material fact, in approximately August 2009, **RACHEL LEE** opened a savings account at Columbia Bank in her name only (xx1074). The funding for this account was

primarily sourced from Jr. and **RACHEL LEE**'s joint bank accounts without Jr.'s informed consent.

24.    It was part of the conspiracy that, in approximately 2009, based on material misrepresentations and omissions of material fact, Jr. and **RACHEL LEE** began representing to others that he had married a woman named Mary Marks. Jr. claimed that Mary Marks was an illegal immigrant from England and Jr. needed to marry her so that Marks could get her green card and remain in the U.S. legally. Jr. also claimed that Marks gave birth to his natural born son, minor "G." Mary Marks allegedly worked and lived in California, and visited Jr. and the minor "G" in Oregon, where the minor "G" remained in the care of **RACHEL LEE**. In fact, no marriage certificate exists for Jr. and Marks. The person who interacted with others as Jr.'s wife Mary Marks was **PORSHA LEE** in disguise. When posing as Mary Marks, **PORSHA LEE** typically presented in heavy make-up, a blond wig, glasses, a hat, and a British accent.

25.    It was part of the conspiracy that, in approximately 2009, through material misrepresentations and omissions of material fact, the fictitious Mary Marks/**PORSHA LEE** began sharing administrative control of R. Tree Farm with **RACHEL LEE**.

26.    It was part of the conspiracy that, between 2006 and 2011, through material misrepresentations and omissions of material fact, the defendants gradually and incrementally took complete control of all financial and business affairs of Sr. and Jr.

27.    It was part of the conspiracy that, between 2006 and 2011, through material misrepresentations and omissions of material fact, the defendants gradually and incrementally isolated Jr. and terminated meaningful contact between Jr., his business associates, his neighbors, and his family.

28.     It was part of the conspiracy that, prior to 2011, based on material

misrepresentations and omissions of material fact, **RACHEL LEE** became the executor of Sr.'s

will.  **RACHEL LEE** also acquired power of attorney for Jr.  In February of 2011, Sr. passed

away.

29.     It was part of the conspiracy that, through material misrepresentations and

omissions of material fact, by the time of Sr.'s death in February 2011, Jr. was fully and totally

dependent on **RACHEL LEE** and **PORSHA LEE**/Mary Marks for all financial and business

decision making.

30.     It was part of the conspiracy that, after Sr.'s death, through material

misrepresentations and omissions of material fact, **RACHEL LEE**, **PORSHA LEE**, and

**PEBBLES LEE** remained in close contact with Jr.

31.     It was part of the conspiracy that, after Sr.'s death, **PEBBLES LEE** allowed her

child, the minor "G," to play the role of Jr.'s alleged son.  **RACHEL LEE** fraudulently

presented as the nanny for the minor "G."

32.     It was part of the conspiracy that, after Sr.'s death in 2011, through material

misrepresentations and omissions of material fact, **RACHEL LEE** and **PORSHA LEE**/Mary

Marks convinced Jr. that he needed to sell R. Tree Farm properties to pay his inheritance tax

assessments.

33.     It was part of the conspiracy that, after February of 2011, through material

misrepresentations and omissions of material fact, **PORSHA LEE**, posing as Jr.'s alleged wife

Mary Marks, conducted negotiations with other business on behalf of the R. Tree Farm,

including the negotiations for sale of R. Tree Farm properties.

34.      It was part of the conspiracy that, through material misrepresentations and omissions of material fact, **PORSHA LEE**, posing as Jr.'s alleged wife Mary Marks, contacted realtor P.G. to initiate and negotiate the sale of Jr.'s R. Tree Farm properties.

35.      It was part of the conspiracy that, through material misrepresentations and omissions of material fact, **PORSHA LEE**, posing as Jr.'s alleged wife Mary Marks, negotiated the sale of at least four parcels of Jr.'s property as follows:

- Approximately 57-58 acres for $1 million;
- Approximately 230 acres for $1.4 million on September 23, 2011;
- Approximately 120 acres for $1.1 million;
- The main plot of approximately 869 acres for $8.8 million on or about July 31, 2012.

36.      It was part of the conspiracy that, through material misrepresentations and omissions of material fact, **RACHEL LEE** and **PORSHA LEE**/Mary Marks caused funds to be transmitted in interstate commerce by means of wire in conjunction with the sale of the above listed Tree Farm properties and the receipt of the sales proceeds.

37.      It was part of the conspiracy that, through material misrepresentations and omissions of material fact, **RACHEL LEE** directed the majority of the proceeds of the R. Tree Farm property sales to bank accounts and assets in **RACHEL LEE**'s name and joint accounts **RACHEL LEE** shared with Jr. without Jr.'s full knowledge or informed consent.

38.      It was part of the conspiracy that, through material misrepresentations and omissions of material fact, **RACHEL LEE** closed joint account xx7270 in September 2012. **RACHEL LEE** transferred the $1.1 million balance to open a new joint account with Jr. on September 10, 2012 (xx9334 at Columbia Bank).  As with joint account xx 7270, Jr. had no true access to or control over this account and **RACHEL LEE** exercised complete control.

39.     It was part of the conspiracy that, through material misrepresentations and omissions of material fact, sometime before July 2013, **RACHEL LEE** opened two additional accounts with Wells Fargo Bank; another joint account with Jr. (account xx4849) and a savings account in **RACHEL LEE**'s name only (account xx8579).

40.     It was part of the conspiracy that **RACHEL LEE** falsely represented to Jr., between 2006 and 2011, that only **RACHEL LEE** had direct access to Jr.'s accounts and a debit card for unrestricted spending.

41.     It was part of the conspiracy that the codefendants failed to truthfully and accurately disclose certain material facts to Jr., including the fact that **RACHEL LEE** provided **BLANCEY LEE** with access to Jr.'s accounts.

42.     It was part of the conspiracy that **RACHEL LEE** falsely represented to Jr., between 2006 and 2011, that **RACHEL LEE** provided payments to **RACHEL LEE**'s family and friends only as payment for the time they assisted with Sr. or for related reimbursements.

43.     It was part of the conspiracy that the codefendants failed to truthfully and accurately disclose certain material facts to Jr., including the fact that **RACHEL LEE** wrote thousands of dollars in checks to her family members including the defendants.

44.     It was part of the conspiracy that the codefendants failed to truthfully and accurately disclose certain material facts to Jr., including the fact that **RACHEL LEE** and **BLANCEY LEE** spent Jr.'s money on frequent trips to California and Las Vegas, including gambling, high-end clothing purchases, entertainment, and accommodations at luxury hotel resorts including the Bellagio, the Venetian, and The Wynn, all with Jr.'s money.

45. It was part of the conspiracy that **RACHEL LEE** falsely represented to Jr.,

between 2006 and 2011, that **RACHEL LEE** and Jr. jointly owned multiple rental properties

and that the income from those rental properties flowed, in part, to Jr.

46. It was part of the conspiracy that the codefendants failed to truthfully and

accurately disclose certain material facts to Jr., including the fact that **RACHEL LEE** and

**BLANCEY LEE** purchased multiple real properties with Jr.'s money between 2010 and 2013.

47. It was part of the conspiracy that the codefendants failed to truthfully and

accurately disclose certain material facts to Jr., including the fact that renters at the Canby

property actually paid rent to **BLANCEY LEE**.

48. It was part of the conspiracy that the codefendants failed to truthfully and

accurately disclose certain material facts to Jr., including the fact that **RACHEL LEE** and

**BLANCEY LEE** purchased the following luxury vehicles with Jr.'s money:

> a. On or about August 1, 2012, **RACHEL LEE** and **BLANCEY LEE** purchased a
> 2012 white California convertible Ferrari from Ferrari & Maserati of San Diego in
> La Jolla, California. **BLANCEY LEE** registered this vehicle in Oregon under his
> name, with plate number "MRBIG1."
> b. On or about August 1, 2012, **BLANCEY LEE** purchased a 2012 Bentley.
> **BLANCEY LEE** registered this vehicle in Oregon under his name, with plate
> number "MRBIG."
> c. On or about September 24, 2012, **BLANCEY LEE** and **RACHEL LEE**
> purchased a 1955 Chevrolet Bel Air Convertible at Affordable Classics Inc. in
> Oregon City.

49. It was part of the conspiracy that, through material misrepresentations and

omissions of material fact, on or about July 15, 2013, **RACHEL LEE** transferred $500,000 from

R. Tree Farm account xx0161 to joint checking xx9334. **RACHEL LEE** told Jr. this transaction

was conducted to help satisfy part of his tax liabilities.

50. It was part of the conspiracy that, through material misrepresentations and

omissions of material fact, on or about July 15, 2013, **RACHEL LEE** induced Jr. to purchase a

cashier's check in the amount of $495,000, drawn from R. Tree Farm xx0161. The cashier's check was made payable to the Oregon Department of Revenue (ODOR). **RACHEL LEE** falsely represented to Jr. that the cashier's check would be used to satisfy part of Jr.'s tax liabilities.

51.     It was part of the conspiracy that **RACHEL LEE** failed to truthfully and accurately disclose certain material facts to Jr., including the fact that the $495,000 check to the ODOR was eventually endorsed by **RACHEL LEE** as "not used for purposes intended" and re-deposited by **RACHEL LEE** into joint account xx9334 without Jr.'s knowledge or consent.

52.     It was part of the conspiracy that **RACHEL LEE** and **PORSHA LEE**/Mary Marks falsely represented to Jr. that no profits existed from the sale of the R. Tree Farm property and timber, due to taxes imposed and paid.

53.     It was part of the conspiracy that **RACHEL LEE** and **PORSHA LEE**/Mary Marks falsely represented to Jr. in 2013 that he would need to file for bankruptcy because he was out of money.

54.     It was part of the conspiracy that, through material misrepresentations and omissions of material fact, on April 23, 2013, **RACHEL LEE** caused $176,986.01 to be transferred from xx9334 (joint) and credited to xx1074 (**RACHEL LEE** only)  by means of wire communications, further described as a telephone transfer request by **RACHEL LEE**.

55.     It was part of the conspiracy that **RACHEL LEE** and **PORSHA LEE**/Mary Marks failed to truthfully and accurately disclose certain material facts to Jr., including the fact that in November of 2013, **PORSHA LEE**/Mary Marks caused the two homes that Jr. retained from the earlier R. Tree Farm property sales to be listed for sale.

56.     It was part of the conspiracy that the defendants failed to truthfully and accurately disclose certain material facts to Jr., including the fact that codefendants' theft caused Jr.'s accounts to be depleted.

57.     It was further part of the conspiracy that the defendants agreed to conceal the nature and existence of the conspiracy and took steps to conceal the existence of the conspiracy.

58.     The misrepresentations of material information and intentional failure to disclose material information, as alleged in paragraphs 11 through 57, induced Jr. to give **RACHEL LEE** full control of his finances and Sr.'s finances and resulted in the theft of millions of dollars of Jr.'s family assets by the defendants.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2 THROUGH 12
### (Engaging in Monetary Transactions in Criminally Derived Property)

1.     The Grand Jury re-alleges each and every allegation contained in each of the paragraphs 1 through 58 of Count 1 of this Indictment, and incorporates them by reference as if set forth herein.

2.     On or about the dates listed below, in the District of Oregon and elsewhere, the defendants set forth below with respect to each count, together with those known and unknown to the Grand Jury, did knowingly engage in and attempt to engage in monetary transactions by, through, or to a financial institution affecting interstate or foreign commerce, with criminally derived property of a value greater than $10,000.00, that is, the purchase of cashier's checks, the making of wire transfers, and the writing of checks, on the dates listed below, such property having been derived from specified unlawful activity, each such monetary transaction being a separate count of this indictment:

///

*United States v. Rachel Lee, et al.*
INDICTMENT                                                                                    PAGE| 12

| Count | Defendant | Date | Amount | Description of Transaction |
|---|---|---|---|---|
| 2 | **RACHEL LEE** | 02/01/2010 | $34,000 | Wire from Acct. 7270 on same day as purchase of 196 SE 3rd Street, Bend |
| 3 | **RACHEL LEE and BLANCEY LEE** | 04/09/2013 | $490,808.05 | Purchase of cashier's check from Acct. 1074 for purchase of 1316 NE Broadway St., Portland, Oregon |
| 4 | **RACHEL LEE** | 10/05/2012 | $251,006 | Purchase of cashier's check from Acct. 9334 |
| 5 | **RACHEL LEE and BLANCEY LEE** | 12/27/2012 | $131,424.86 | Wire out from Acct. 9334 for purchase of 1180 Newberg Highway, Woodburn, Oregon |
| 6 | **RACHEL LEE and BLANCEY LEE** | 11/29/2011 | $231,963.03 | Purchase of cashier's check from Acct. 7270 for purchase of 422 SE 16th Ave., Hillsboro, Oregon |
| 7 | **RACHEL LEE** | 02/28/2013 | $10,007 | Purchase of a cashier's check from Acct. 1074 |
| 8 | **RACHEL LEE and BLANCEY LEE** | 07/27/2012 | $25,000 | Check #1456 from Acct. 7270 for purchase of 2012 Ferrari California |
| 9 | **RACHEL LEE and BLANCEY LEE** | 08/1/2012 | $201,437 | Wire out from Acct. 7270 for purchase of 2012 Ferrari California |
| 10 | **RACHEL LEE and BLANCEY LEE** | 08/01/2012 | $125,000 | Wire out from Acct. 7270 for purchase of vehicle from dealership in Dallas, Texas |
| 11 | **RACHEL LEE and BLANCEY LEE** | 09/24/2014 | $56,006 | Purchase of cashier's check from Acct. 9334 for purchase of 1955 Chevrolet Bel-Air |
| 12 | **RACHEL LEE and PORSHA LEE** | 04/19/2012 | $103,000 | Check payable to PORSHA LEE for listed amount signed by RACHEL LEE, from Acct. 7270, no check number. |

All in violation of Title 18, United States Code, Section 1957.

## COUNT 13
### (Conspiracy to Commit Transactional Money Laundering)

1.     The Grand Jury re-alleges each and every allegation contained in each of the

paragraphs of Counts 1 through 12 of this Indictment and incorporates them by reference as if

set forth herein.

2.     From in or about 2004 and continuing until the date of this indictment, in the

District of Oregon and elsewhere, defendants **RACHEL LEE**, **BLANCEY LEE**, **PORSHA**

**LEE**, and **SAMANTHA LEE**, did unlawfully, knowingly, and intentionally combine, conspire,

confederate, and agree with each other, and with others, both known and unknown to the Grand

Jury, to engage or attempt to engage in monetary transactions affecting interstate commerce, in

criminally derived property of a value greater than $10,000, such property having been derived

from specified unlawful activity, in violation of Title 18, United States Code, Section 1956(h).

## FIRST FORFEITURE ALLEGATION

Upon conviction of one or more of the offenses alleged in Count 1 of this Indictment,

defendant(s) **RACHEL LEE, BLANCEY LEE, PORSHA LEE**, and **SAMANTHA LEE** shall

forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any

property constituting or derived from proceeds obtained directly or indirectly as a result of the

said violation(s), including but not limited to the following:

1. MONEY JUDGMENT

A sum of money representing the amount of proceeds obtained as a result of the offense

of wire fraud, for which the defendants are jointly and severally liable, in the form of a money

judgment.

2. REAL PROPERTY

(a)     All that lot or parcel of land, together with its buildings, appurtenances, improvements,
fixtures, attachments and easements, located at **309 SE 1st AVENUE AND 126 S.
KNOTT STREET, CANBY, CLACKAMAS COUNTY, OREGON,** and more
particularly described as:

> **Parcel I:**
> **Lots 8 and 9, ALBERT LEE'S SECOND ADDITION TO THE CITY
> OF CANBY, in the city of Canby, County of Clackamas and State of
> Oregon.**
> **EXCEPTING THEREFROM the Southeasterly 46 feet conveyed to**

Edward Hiller and wife by Deed recorded April 5, 1937, in Book 200, Page 636, Clackamas County Deed Records.

**Parcel II:**
**The Southeasterly 45 feet of Lots 8 and 9, ALBERT LEE'S SECOND ADDITION TO THE CITY OF CANBY, in the City of Canby, Clackamas County, Oregon, described as follows: Beginning at the Southerly corner of said Lot 8, on M Street; thence Northwesterly, along the Northeasterly line of M street, 46 feet; thence Easterly, at right angles to M Street, 100 feet to the Northeasterly line of said Lot 9; thence Southeasterly, on said Northeasterly line of Lot 9, 46 feet to the most Easterly corner of said Lot 9; thence Southwesterly, on the Southeasterly line of said lots, 100 feet to the place of beginning.**

(b)    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at **422 SE 16th AVENUE, HILLSBORO, WASHINGTON COUNTY, OREGON,** and more particularly described as: **Lots 3, 4 and the North one-half of Lot 5, Block 1, BROWN'S SUBDIVISION OF BLOCKS "H AND I" IN FAIRVIEW ADDITION TO HILLSBORO OREGON, in the City of Hillsboro, County of Washington and State of Oregon.**

**Tax ID# R315260**

(c)    All that lot or parcel of land, together with its buildings, appurtenances, improvements,

fixtures, attachments and easements, located at **1316 AND 1320 NE BROADWAY**

**STREET, PORTLAND, MULTNOMAH COUNTY, OREGON,** and more

particularly described as:

**The West 40 feet of Lots 7 and 8, Block 226, HOLLADAY'S ADDITION TO EAST PORTLAND, in the City of Portland, Multnomah County, Oregon. EXCEPTING the North 10 feet thereof taken for the widening of NE Broadway Street. Tax Account No. R182408.**

(d)    All that lot or parcel of land, together with its buildings, appurtenances, improvements,

fixtures, attachments and easements, located at **196 S.E. 3rd STREET, BEND,**

**DESCHUTES COUNTY, OREGON,** and more particularly described as:

**Lot 13 in Block 186 of THIRD ADDITION TO BEND PARK, City of Bend, Deschutes County, Oregon.**

*United States v. Rachel Lee, et al.*
INDICTMENT

(e)     All that lot or parcel of land, together with its buildings, appurtenances, improvements,

fixtures, attachments and easements, located at **260 S. KNOTT STREET, CANBY,**

**CLACKAMAS COUNTY, OREGON,** and more particularly described as:

**Part of Section 33, Township 3 South, Range 1 East of The Willamette
Meridian, in the City of Canby, County of Clackamas and State of Oregon,
Described as Follows:
Beginning at a point which is North 26 West and 400 feet distant from the
Southeast corner of a Tract described in Deed Recorded January 16, 1884 in
Deed Book "X", Page 169, Clackamas County deed records; Thence North
26 West, 50 feet; Thence South 64 West, 125 feet; Thence South 26 East, 50
feet; Thence North64 East 125 feet to the place of beginning.**

(f)     All that lot or parcel of land, together with its buildings, appurtenances, improvements,

fixtures, attachments and easements, located at **623 MAIN STREET, HILLSBORO,**

**WASHINGTON COUNTY, OREGON,** and more particularly described as:

**PARCEL I:
Commencing at a point on the South line of Lot 5 , Block 2, ENNES
ADDITION TO THE CITY OF HILLSBORO, in the City of
Hillsboro, County of Washington, State of Oregon, which point is 87
feet 7 inches West of the Southeast corner of Lot 6, said Block 2;
running thence West, along the South line of Lot 5, Block 2, 65 feet;
thence North 200 feet; thence East 65 feet; thence South 200 feet,
more or less, to the place of beginning.**

**EXCEPTING THEREFROM that certain tract described in deed
recorded in Book 165, Page 256, Records of Deeds of Washington
County, Oregon.**

**TOGETHER WITH that portion of vacated alley running East and
West through said Block 2 which inured thereto by reason of City of
Hillsboro action entered December 12, 1900 in Book 2, Page 204 and
recorded December 22, 1983, Fee No.83047308.**

**PARCEL II:
Situated in Section 31, Township1North, Range 2 West of the
Willamette Meridian, City of Hillsboro, Washington County, Oregon
and being a part of Lots 5 and 6 plus a portion of the vacated alley, all
in Block 2, Ennes Addition to Hillsboro, a plat of record in said
county, described as follows:**

**Beginning at the southeast corner of the Manley tract as described in Deed Book 216, Page 217, said County Records, common with the southwest corner of the Scheller tract as described in Deed Document No.95082331, and being on the north right of way of East Main Street, and running thence North 02°22'20" East, on the common line between aforesaid tracts, 211.17 feet to a point in the center of the vacated alley, said Block 2, Ennes Addition; thence South 86°43'50" East, in the center of the vacated alley, 85.45 feet to a point on the west line of that tract described in Deed Book 1046, Page 131; thence South 02°31'35" West, parallel with NE 7th Avenue, on aforesaid tract west line, 60.00 feet to the southwest corner thereof; thence North 86°43'50" West 10.00 feet to a point; thence South 02°31'35" West 24.33 feet to a point; thence North 86°43'50" West 65.22 feet to a point; thence South 02°22'20" West, parallel to and 10.00 feet distant from the east line of the Manley tract as described in Deed Book 216, Page 217, said County Deed Records,127.57 feet to a point on the north right of way of East Main Street; thence North 82°31'13" West, on said right of way, 10.04 feet to the point of beginning.**

**(This legal description was created prior to January 1, 2008.)**

**PARCEL III:**
**Parcel 1 of Partition Plat No. 2008-027, in the city of Hillsboro, Washington County, Oregon**

(g) All that lot or parcel of land, together with its buildings, appurtenances, improvements,

fixtures, attachments and easements, located at **1180 NEWBERG HIGHWAY,**

**WOODBURN, MARION COUNTY, OREGON,** and more particularly described as:

**Part of George Leasure Donation Land Claim in Township 5 South, Range1 West of the Willamette Meridian, Marion County, Oregon, more particularly described as follows:**
**Beginning at the Northeast corner of Lot 1 of HALL'S HOME TRACTS; thence South 13°24' West along the easterly line of said Lot, 140 feet; thence North 88°30' West 48.0 feet; thence North 0°45' East 135.0 feet to the North line of said Lot 1; thence South 88°30' East 78.50 feet to the point of beginning.**

///

///

///

3. CONVEYANCES

| Year | Make | Model | VIN | Plate |
|------|------|-------|-----|-------|
| 2012 | Ferrari | California | ZFF65TJA8D0189279 | MRBIG1 |
| 2012 | Bentley | Mulsane | SCBBB7ZHXCC016796 | MRBIG |
| 1955 | Chevrolet | Bel-Air | VC550024100 | WMC468 |
| 2012 | Mercedes Benz | 550 | WODNG9E84CA445894 | 725FNCS |

4. BANK ACCOUNT

All United States currency funds or other monetary instruments credited to the following

accounts:

| Account | Account Name | Bank | Bank Location |
|---------|-------------|------|---------------|
| ##1074 | Rachel Lee | Columbia Bank | 1000 SW Broadway, Suite 100, Portland, Oregon, 97205 |
| ##9334 | Rachel Lee and Ralph Raines Jr. | Columbia Bank | 1000 SW Broadway, Suite 100, Portland, Oregon, 97205 |
| ##8579 | Rachel Lee | Wells Fargo Bank | 1300 SW 5th Ave., Portland, Oregon, 97204 |

If any of the above-described forfeitable property, as a result of any act or omission of the

defendants:

  (a) cannot be located upon the exercise of due diligence;

  (b) has been transferred or sold to, or deposited with, a third party;

  (c) has been placed beyond the jurisdiction of the court;

  (d) has been substantially diminished in value; or

  (e) has been commingled with other property which cannot be divided without difficulty;

*United States v. Rachel Lee, et al.*
INDICTMENT                                                    PAGE| 18

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

### SECOND FORFEITURE ALLEGATION

Upon conviction of one or more of the offenses alleged in Counts 2 through 13 of this Indictment, defendants **RACHEL LEE, BLANCEY LEE, PORSHA LEE**, and **SAMANTHA LEE** shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1), all property, real and personal, involved in the money laundering offense(s) and all property traceable to such property, including but not limited to the following:

1. MONEY JUDGMENT

A sum of money representing the amount of proceeds obtained as a result of the offense of money laundering, for which the defendants are jointly and severally liable, in the form of a money judgment.

2. REAL PROPERTY

(a)     All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at **309 SE 1st AVENUE AND 126 S. KNOTT STREET, CANBY, CLACKAMAS COUNTY, OREGON,** and more particularly described as:

> **Parcel I:**
> **Lots 8 and 9, ALBERT LEE'S SECOND ADDITION TO THE CITY OF CANBY, in the city of Canby, County of Clackamas and State of Oregon.**
> **EXCEPTING THEREFROM the Southeasterly 46 feet conveyed to Edward Hiller and wife by Deed recorded April 5, 1937, in Book 200, Page 636, Clackamas County Deed Records.**
>
> **Parcel II:**
> **The Southeasterly 45 feet of Lots 8 and 9, ALBERT LEE'S SECOND ADDITION TO THE CITY OF CANBY, in the City of Canby, Clackamas County, Oregon, described as follows:**
> **Beginning at the Southerly corner of said Lot 8, on M Street; thence**

**Northwesterly, along the Northeasterly line of M street, 46 feet; thence Easterly, at right angles to M Street, 100 feet to the Northeasterly line of said Lot 9; thence Southeasterly, on said Northeasterly line of Lot 9, 46 feet to the most Easterly corner of said Lot 9; thence Southwesterly, on the Southeasterly line of said lots, 100 feet to the place of beginning.**

(b)     All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at **422 SE 16th AVENUE, HILLSBORO, WASHINGTON COUNTY, OREGON,** and more particularly described as:

**Lots 3, 4 and the North one-half of Lot 5, Block 1, BROWN'S SUBDIVISION OF BLOCKS "H AND I" IN FAIRVIEW ADDITION TO HILLSBORO OREGON, in the City of Hillsboro, County of Washington and State of Oregon.**

**Tax ID# R315260**

(c)     All that lot or parcel of land, together with its buildings, appurtenances, improvements,

fixtures, attachments and easements, located at **1316 AND 1320 NE BROADWAY**

**STREET, PORTLAND, MULTNOMAH COUNTY, OREGON,** and more

particularly described as:

**The West 40 feet of Lots 7 and 8, Block 226, HOLLADAY'S ADDITION TO EAST PORTLAND, in the City of Portland, Multnomah County, Oregon. EXCEPTING the North 10 feet thereof taken for the widening of NE Broadway Street. Tax Account No. R182408.**

(d)     All that lot or parcel of land, together with its buildings, appurtenances, improvements,

fixtures, attachments and easements, located at **196 S.E. 3rd STREET, BEND,**

**DESCHUTES COUNTY, OREGON,** and more particularly described as:

**Lot 13 in Block 186 of THIRD ADDITION TO BEND PARK, City of Bend, Deschutes County, Oregon.**

(e)     All that lot or parcel of land, together with its buildings, appurtenances, improvements,

fixtures, attachments and easements, located at **260 S. KNOTT STREET, CANBY,**

**CLACKAMAS COUNTY, OREGON,** and more particularly described as:

Part of Section 33, Township 3 South, Range 1 East of The Willamette
Meridian, in the City of Canby, County of Clackamas and State of Oregon,
Described as Follows:
Beginning at a point which is North 26 West and 400 feet distant from the
Southeast corner of a Tract described in Deed Recorded January 16, 1884 in
Deed Book "X", Page 169, Clackamas County deed records; Thence North
26 West, 50 feet; Thence South 64 West, 125 feet; Thence South 26 East, 50
feet; Thence North64 East 125 feet to the place of beginning.

(f)     All that lot or parcel of land, together with its buildings, appurtenances, improvements,

fixtures, attachments and easements, located at 623 MAIN STREET, HILLSBORO,

WASHINGTON COUNTY, OREGON, and more particularly described as:

PARCEL I:
Commencing at a point on the South line of Lot 5 , Block 2, ENNES
ADDITION TO THE CITY OF HILLSBORO, in the City of
Hillsboro, County of Washington, State of Oregon, which point is 87
feet 7 inches West of the Southeast corner of Lot 6, said Block 2;
running thence West, along the South line of Lot 5, Block 2, 65 feet;
thence North 200 feet; thence East 65 feet; thence South 200 feet,
more or less, to the place of beginning.

EXCEPTING THEREFROM that certain tract described in deed
recorded in Book 165, Page 256, Records of Deeds of Washington
County, Oregon.

TOGETHER WITH that portion of vacated alley running East and
West through said Block 2 which inured thereto by reason of City of
Hillsboro action entered December 12, 1900 in Book 2, Page 204 and
recorded December 22, 1983, Fee No.83047308.

PARCEL II:
Situated in Section 31, Township1North, Range 2 West of the
Willamette Meridian, City of Hillsboro, Washington County, Oregon
and being a part of Lots 5 and 6 plus a portion of the vacated alley, all
in Block 2, Ennes Addition to Hillsboro, a plat of record in said
county, described as follows:

Beginning at the southeast comer of the Manley tract as described in
Deed Book 216, Page 217, said County Records, common with the
southwest corner of the Scheller tract as described in Deed Document
No.95082331, and being on the north right of way of East Main Street,
and running thence North 02°22'20" East, on the common line
between aforesaid tracts, 211.17 feet to a point in the center of the

vacated alley, said Block 2, Ennes Addition; thence South 86°43'50"
East, in the center of the vacated alley, 85.45 feet to a point on the
west line of that tract described in Deed Book 1046, Page 131; thence
South 02°31'35" West, parallel with NE 7th Avenue, on aforesaid
tract west line, 60.00 feet to the southwest corner thereof; thence
North 86°43'50" West 10.00 feet to a point; thence South 02°31'35"
West 24.33 feet to a point; thence North 86°43'50" West 65.22 feet to a
point; thence South 02°22'20" West, parallel to and 10.00 feet distant
from the east line of the Manley tract as described in Deed Book 216,
Page 217, said County Deed Records,127.57 feet to a point on the
north right of way of East Main Street; thence North 82°31'13" West,
on said right of way, 10.04 feet to the point of beginning.

(This legal description was created prior to January 1, 2008.)

PARCEL III:
Parcel 1 of Partition Plat No. 2008-027, in the city of Hillsboro,
Washington County, Oregon

(g)    All that lot or parcel of land, together with its buildings, appurtenances, improvements,

fixtures, attachments and easements, located at **1180 NEWBERG HIGHWAY,**

**WOODBURN, MARION COUNTY, OREGON,** and more particularly described as:

Part of George Leasure Donation Land Claim in Township 5 South, Range1
West of the Willamette Meridian, Marion County, Oregon, more particularly
described as follows:
Beginning at the Northeast corner of Lot 1 of HALL'S HOME TRACTS;
thence South 13°24' West along the easterly line of said Lot, 140 feet; thence
North 88°30' West 48.0 feet; thence North 0°45' East 135.0 feet to the North
line of said Lot 1; thence South 88°30' East 78.50 feet to the point of
beginning.

3. CONVEYANCES

| Year | Make | Model | VIN | Plate |
|------|------|-------|-----|-------|
| 2012 | Ferrari | California | ZFF65TJA8D0189279 | MRBIG1 |
| 2012 | Bentley | Mulsane | SCBBB7ZHXCC016796 | MRBIG |
| 1955 | Chevrolet | Bel-Air | VC550024100 | WMC468 |
| 2012 | Mercedes Benz | 550 | WODNG9E84CA445894 | 725FNCS |

## 4. BANK ACCOUNTS

All United States currency funds or other monetary instruments credited to the following

accounts:

| *Account* | *Account Name* | *Bank* | *Bank Location* |
|-----------|----------------|--------|------------------|
| ##1074 | Rachel Lee | Columbia Bank | 1000 SW Broadway, Suite 100, Portland, Oregon, 97205 |
| ##9334 | Rachel Lee and Ralph Raines Jr. | Columbia Bank | 1000 SW Broadway, Suite 100, Portland, Oregon, 97205 |
| ##8579 | Rachel Lee | Wells Fargo Bank | 1300 SW 5th Ave., Portland, Oregon, 97204 |

If any of the above-described forfeitable property, as a result of any act or omission of the

defendants:

    (a)  cannot be located upon the exercise of due diligence;

    (b)  has been transferred or sold to, or deposited with, a third party;

    (c)  has been placed beyond the jurisdiction of the court;

    (d)  has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be divided without difficulty;

///

///

///

///

///

///

///

*United States v. Rachel Lee, et al.*
INDICTMENT

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C.

§ 982(b), to seek forfeiture of any other property of said defendant(s) up to the value of the

forfeitable property described above.

Dated this ___7___ day of May 2014.

A TRUE BILL.



OFFICIATING FOREPERSON

Presented by:

S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon

DONNA MADDUX, OSB #023757
Assistant United States Attorney
(503) 727-1000

*United States v. Rachel Lee, et al.*
INDICTMENT                                                          PAGE| 24